FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

2016 SEP 26  P 2: 05

CLERK [illegible]
[illegible]

| | |
|---|---|
| POONAM BAXLA | |
| Plaintiff, | Civil Action No.: 1:16-CU-1218 (JCC/MSN) |
| -against- | |
| SHAHZAD CHAUDHRI, ASMA CHAUDHRI | COMPLAINT |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff Poonam Baxla, by and through her undersigned counsel, alleges as follows:

## INTRODUCTION

1.      Plaintiff Poonam Baxla (hereinafter "Ms. Baxla" or the "Plaintiff") was trafficked into the United States and subjected to forced labor and/or domestic servitude by the Defendants, Asma and Shahzad Chaudhri (collectively the "Defendants"). Upon information and belief, the Defendants conspired to obtain Ms. Baxla's services with a co-conspirator, "Nancy," who resided at all relevant times in New Delhi, India. In conjunction with Nancy, the Defendants arranged for the transportation of Ms. Baxla from India to the United States. The Defendants received Ms. Baxla in the United States and harbored her in their home in Virginia. Over the course of an approximately ten-year period, with the exception of only two brief periods, the Defendants forced Ms. Baxla to work nearly seventeen hours a day, seven days a week, under conditions of isolation and/or the threat of deportation and/or imprisonment. These threats were credible to Ms. Baxla because she could neither read nor speak English, had no friends in the United States, and was unfamiliar with U.S. immigration and labor laws. The Defendants' threats

were also credible because the Defendants permitted Ms. Baxla's visa to lapse, despite their repeated promises to renew it. During this period, the Defendants paid Ms. Baxla unlawful and inadequate wages.

2.      Ms. Baxla was born in India, where she lived for many years, including with her husband and three daughters. Her husband was murdered in India in 2004. Since that time, Ms. Baxla has provided for her three daughters residing in India. Ms. Baxla has seen her daughters only once in the last ten years.

3.      Following her husband's murder, Ms. Baxla struggled to find work in India. Desperate to support her daughters and to provide for their education, she sought help from her brother-in-law, who introduced her to Nancy. Nancy offered to find her work in a private home in the United States. In need of money to provide for her young daughters, Ms. Baxla agreed.

4.      Upon information and belief, Nancy conspired with Ms. and Mr. Chaudhri to traffic Ms. Baxla into the United States so that Ms. Baxla would work for the Chaudhris in sub-standard conditions, for little pay. Nancy provided Ms. Baxla with a ticket to the United States and arranged for her travel documents, including a two-year visa. Although fearful because she could neither speak nor read English, Ms. Baxla, who had never before left India, embarked for the United States in 2005. She was approximately twenty-six years old.

5.      The Defendants were waiting at the airport for her arrival. Ms. Baxla had never seen or communicated with the Defendants prior to her arrival in the United States. The Defendants transported Ms. Baxla to their home in Virginia.

6.      Other than for two brief periods, Ms. Baxla lived in the Defendants' home from her arrival in the United States in 2005 until her escape in 2015. During the time she lived in the Defendants' home, Ms. Baxla worked for the Defendants, providing childcare and housekeeping

services. In exchange for this work, the Defendants paid her a paltry wage of $350 a month until 2011 and $400 a month thereafter, except for July and August 2015—months for which the Defendants failed to pay Ms. Baxla at all. The Defendants required Ms. Baxla to pay for all of her expenses, with the exception of food, out of her wages; she sent whatever remained of her wages back to her children in India.

7.      While living with the Defendants, Ms. Baxla was forbidden to leave the home unaccompanied and was never given a key to the house. The Defendants also instructed Ms. Baxla not to speak to anyone, especially other Indian people. To ensure Ms. Baxla's compliance with their prohibitions, the Defendants warned Ms. Baxla that other people would be suspicious of her and why she was in the country. The Defendants implied that these suspicions would lead to questions and could result in the involvement of law enforcement authorities, and, ultimately, deportation or jail.

8.      Despite their promises to renew her visa, the Defendants allowed Ms. Baxla's visa to expire in 2007, leaving Ms. Baxla more vulnerable to the Defendants' threats of deportation and jail. The Defendants exploited Ms. Baxla's vulnerability as an immigrant to prevent her from leaving the position, from learning of the unlawfulness of their conduct, and from complaining about her working conditions to others.

9.      In 2015, after approximately ten years of working for the Defendant in these conditions, Ms. Baxla escaped with the help of two Good Samaritans and agents from a government agency, believed to be the Department of Homeland Security.

10.      Although Ms. Baxla wants nothing more than to put her painful experience behind her, she cannot do so until Defendants are forced to account for their conduct.

11.     Ms. Baxla therefore brings this lawsuit to hold Defendants liable for their violations of the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"), the Fair Labor Standards Act ("FLSA"), and Virginia law, and to recover unpaid wages and interest thereon, as well as compensatory damages, punitive damages, and such other relief as this Court deems just and proper.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises in part under the TVPA, 18 U.S.C. §§ 1581-1597, and the FLSA, 29 U.S.C. §§ 201-219a.

13.     This Court has supplemental subject matter jurisdiction over Ms. Baxla's state-law claims pursuant to 28 U.S.C. § 1367.

14.     The Defendants are subject to the personal jurisdiction of the Court in this District, because the Defendants resided in this District during all relevant times, and Ms. Baxla's claims arise out of the Defendants' conduct while resident in this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of the State in which this District is located.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

17.     Ms. Baxla is a thirty-seven year old citizen of India who currently resides in the United States.  She has applied for a T Nonimmigrant Status Visa.  At the time of the events that give rise to this Complaint, Ms. Baxla resided in Falls Church, Virginia.

18.     At all times relevant hereto, the Defendants, Asma and Shahzad Chaudhri, resided in Falls Church, Virginia and, upon information and belief, worked in the Washington, D.C. area.  Upon information and belief, Asma and Shahzad Chaudhri are citizens of Pakistan.

## BACKGROUND

19.     Ms. Baxla is a survivor of forced labor, involuntary servitude, and/or human trafficking as defined by the TVPA.  Traffickers coerce their victims through a variety of means, including through psychological abuse, threats, isolation, and confinement.

Ms. Baxla Is Trafficked From India To The United States.

20.     Ms. Baxla was born in Jharkhand, India in or around 1978 or 1979.  In or around 1998, Ms. Baxla married Sameer Baxla, with whom she had three daughters.  For much of their marriage, Ms. Baxla and her husband lived with their children in New Delhi, India.  Ms. Baxla worked in private homes, providing childcare and cooking services.  Her husband worked in construction.

21.     In or around 2004, Ms. Baxla's husband was murdered in New Delhi, leaving her alone to support her three young daughters.

22.     Devastated by her husband's murder, Ms. Baxla returned to Jharkhand to mourn with her family.  As there was no work for her in Jharkhand, Ms. Baxla knew she had to return to New Delhi to find work.  Her family agreed to look after her daughters while she returned to New Delhi.

23.     Upon her return to New Delhi, in or around January 2005, Ms. Baxla lived with her husband's brother, "Ajit."  Although she searched for work in New Delhi, she could not find a suitable position.  Ajit then introduced her to a woman named Nancy.  Nancy recruited Ms.

Baxla by offering to arrange a job in the United States performing childcare work. Because she needed funds to support her daughters, Ms. Baxla accepted Nancy's offer.

24.     Nancy arranged for Ms. Baxla's ticket to travel to the United States and travel documents, including a two-year visa. Nancy did not tell Ms. Baxla for whom she would be working—only that the work would involve a lot of babysitting. Ms. Baxla believed she would have childcare and cooking responsibilities similar to those of her previous positions with families in New Delhi. Nancy did not tell Ms. Baxla that she would be expected to take on other housekeeping duties, such as cleaning. Upon information and belief, Nancy had recruited Ms. Baxla in coordination with the Chaudhris.

25.     In 2005, Ms. Baxla flew from India to the United States. Upon Ms. Baxla's arrival, the Defendants, with whom Ms. Baxla had never previously met or spoken, met Ms. Baxla at the airport. The Defendants had coordinated and arranged with Nancy to receive Ms. Baxla at the airport and to transport her to their home in Virginia in order for her to begin working in their home.

26.     The Defendants transported Ms. Baxla to their home in Falls Church, Virginia.

The Defendants Subject Ms. Baxla To Forced Labor.

27.     On Ms. Baxla's first full day in the United States, the Defendants put her directly to work. The Defendants explained to Ms. Baxla that she would be expected to clean their three-floor, four bedroom home on a daily basis, prepare meals for the family, and provide childcare for their infant daughter. Ms. Baxla had not previously been aware that the position would involve cleaning the family home; in her other positions in India, she had only been responsible for cooking and childcare.

28.     On a typical day, Ms. Baxla would start working in the kitchen at around five or six in the morning, depending on the needs of the Defendants' child. She would prepare breakfast for the family and pack lunches for the Defendants to take with them to work. Throughout the day, she would provide childcare for the Defendant's daughter and also clean the entire home from top to bottom. In addition, she was responsible for preparing dinner for the Defendants, as well as lunch and dinner for their daughter. Due to the demanding nature of daily care for a young child, Ms. Baxla was often unable to complete the task of cleaning the home during the Defendants' workday. Thus, after cleaning up for the Defendants after their dinner, Ms. Baxla would continue to clean the house, often until eleven or twelve at night.

29.     Ms. Baxla was not permitted to eat with the Defendants and was often unable to find time to eat during the day and evening. At many times, especially when the Defendants' daughter was younger, Ms. Baxla would not have an opportunity to eat dinner until the end of her workday, at eleven or twelve at night.

30.     The Defendants frequently had other family members or friends come to visit and stay in their home. Ms. Baxla was responsible for cooking for and cleaning up after these visitors as well. When the Defendants' relatives came to visit, there could be up to ten additional people staying in the house at one time. These additional responsibilities lengthened Ms. Baxla's already long workday.

31.     In exchange for this labor, the Defendants paid Ms. Baxla $350 every month through 2011. In 2011, after 6 years of work, Ms. Baxla's monthly pay was increased to $400.

32.     From time to time, the Defendants sent Ms. Baxla to perform work for Mr. Chaudhri's mother, Naseen Chaudhri, who operated a daycare in Arlington, Virginia. Ms. Baxla once worked at the daycare for an entire month while Naseen Chaudhri traveled. For this month,

she was paid $400 by Naseen Chaudhri instead of by the Defendants. Ms. Baxla also worked at the daycare for single days from time to time at the request of Naseen Chaudhri.

33.     The Defendants required Ms. Baxla to work every day, including Saturday and Sunday. The Defendants never permitted Ms. Baxla to take time off for vacations or personal activities. The Defendants did not permit Ms. Baxla to take even a few hours off to attend church services on Sunday mornings, despite her specific request to do so. Ms. Baxla was only ever permitted to take time off from work when illness prevented her from being able to perform her job responsibilities.

34.     With one exception, the Defendants did not permit Ms. Baxla to travel. In 2006, the Defendants permitted Ms. Baxla to return to India because her daughter had fallen seriously ill. Ms. Baxla returned to India for one month in 2006 to take care of her daughter. Ms. Baxla agreed to return to the United States because the Defendants promised to assist her with the renewal of her travel documents upon her return. Ms. Baxla was unable to look for work in India during this trip because she had to care for her seriously ill daughter. All three of Ms. Baxla's daughters continued to need financial support to attend school.

The Defendants Isolate Ms. Baxla from the Outside World, Threatening Her with Deportation.

35.     The Defendants forced Ms. Baxla to live in isolation from the outside world. At all relevant times, Ms. Baxla spoke (and continues primarily to speak) only Hindi. The Defendants repeatedly instructed Ms. Baxla not to talk to anyone, especially other Indian people. The Defendants instructed Ms. Baxla that, if asked a question by an Indian person, she should respond only that she worked for the Defendants. The Defendants used the fact that Ms. Baxla did not speak English to isolate her from the outside world. The Defendants told Ms. Baxla that, were she to go out alone, people would ask her questions, and if she could not understand or

answer them, those people would become suspicious of her. The Defendants suggested that such encounters could result in, among other things, her being reported to law enforcement authorities and her possible deportation. Ms. Baxla was especially afraid of these threats due to her husband's murder.

36. Ms. Baxla was rarely permitted to leave the home where Defendants lived. And on the occasions when Ms. Baxla was permitted to leave the home, for example to assist with grocery shopping, the Defendants ensured that she was never unaccompanied.

37. Ms. Baxla is a Christian, and she requested to attend church services on Sunday mornings. Fearful that their conduct would be uncovered—even inadvertently—the Defendants refused to permit Ms. Baxla to take any time off from work to attend services and forbade her from ever attending church. To ensure that she would not disobey their order, the Defendants told Ms. Baxla that people at the church would ask her why she was in the country and implied that those people would report her to the authorities.

38. The frequency of these warnings increased following the expiration of Ms. Baxla's visa in 2007.

39. Ms. Baxla relied on the Defendants to interact even with her family in India. The Defendants arranged for her to transfer whatever money she could save after personal expenses to support her children. The Defendants required Ms. Baxla to purchase a calling card to use the house phone to call her family. Ms. Baxla did not have a mobile phone, nor did she have a phone in her private room in the Defendants' home.

40. In 2014, Mr. Chaudhri falsely accused Ms. Baxla of mistreating the family dog, threatened to initiate deportation proceedings against her, and kicked her out of the Chaudhris' home for a short period. By this point, Ms. Baxla's visa already had expired, so she lacked legal

status to find other work in the United States to provide support to her family. Additionally, she still could neither read nor speak English, and she had been deliberately isolated by the Defendants for approximately nine years. Based on the Defendants' repeated threats, she continued to believe that she might be deported if discovered. Ms. Baxla had no other option but to return to the Defendants. The Defendant made assurances to Ms. Baxla that, upon her return, they would increase her pay and renew her visa. Faced with no other options, Ms. Baxla returned to servitude.

The Defendants Allow Ms. Baxla's Visa To Expire, Consistently Promise To Renew It, But Never Actually Do So, In Order To Exert Additional Control Over Her.

41.     The Defendants repeatedly used Ms. Baxla's immigration status as a way to control her and ensure that she continued to work for them, despite her long working hours and low pay.

42.     Ms. Baxla arrived in the United States with a two-year visa that was set to expire in 2007. Concerned about her legal status, Ms. Baxla sought the Defendants' assistance in renewing her visa, and the Defendants repeatedly assured Ms. Baxla that they would take care of the renewal. Despite their repeated assurances, however, the Defendants never took the necessary steps to do so. As a result, Ms. Baxla's visa expired in or around 2007, shortly after her return from India. Ms. Baxla's visa was never renewed.

43.     Once her visa expired, Ms. Baxla became even more afraid that if she were discovered in the United States, she would be deported or, even worse, jailed by law enforcement authorities. Ms. Baxla came to this conclusion based on warnings and threats by the Defendants to that effect.

44.     Desperate to continue supporting her children in India, Ms. Baxla repeatedly pleaded with the Defendants to assist her with the renewal of her visa as they had promised.

However, the Defendants did not help her obtain a renewed visa. Instead, they used her vulnerability as an undocumented person in this country to their own advantage.

45.     The Defendants exploited Ms. Baxla's fears of deportation and jail for their own purposes. The Defendants told Ms. Baxla that if she left the home unaccompanied, she would be reported to the authorities and jailed or deported. The Defendants told her that, if she traveled by bus, the police would come on board and arrest her.

**Ms. Baxla Is Able To Escape From the Defendants' Home Only With The Assistance Of Two Good Samaritans and Federal Agents.**

46.     Ms. Baxla was finally able to escape from the Chaudhris in 2015. In or around September 2014, Ms. Baxla was contacted by Manju and John Ekka (the "Ekkas"). The Ekkas, who live in New Jersey, had travelled to Jharkhand in August 2014 and had heard about Ms. Baxla's situation from her family members, to whom Ms. Baxla had told about her work conditions and pay. The Ekkas wanted to help Ms. Baxla leave the Defendants' home.

47.     At first, Ms. Baxla was too afraid of deportation to act. The Defendants learned of her communications with the Ekkas and barred her from speaking to them.

48.     In spring 2015, Ms. Baxla decided to accept an offer of help from the Ekkas.

49.     The Ekkas contacted a government agency, believed to be the Department of Homeland Security, to ensure that Ms. Baxla would be able to escape the home safely.

50.     On August 24, 2015, federal agents, believed to be from the Department of Homeland Security, picked Ms. Baxla up in a van near the Defendants' home. Leaving behind her clothing and possessions, Ms. Baxla entered the van and was taken to a shelter.

51.     Ms. Baxla is now employed in Delaware by a family for whom she provides childcare and housekeeping services.

## CLAIMS FOR RELIEF

### <u>COUNT I</u>

**Forced Labor in Violation of the TVPA, 18 U.S.C. § 1589, 18 U.S.C. § 1595**

52.     Ms. Baxla repeats, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

53.     As alleged herein, the Defendants knowingly obtained Ms. Baxla's labor and services by means of threatened abuse of legal process including deportation, and by means of a scheme, plan, or pattern intended to cause Ms. Baxla to believe that if she did not perform labor and services for the Defendants, she would suffer serious reputational harm, physical restraint, or other adverse consequences, as described by the forced labor provisions of the TVPA, 18 U.S.C. § 1589.

54.     Ms. Baxla brings these claims pursuant to the civil cause of action for victims of forced labor in 18 U.S.C. § 1595.

55.     As a direct and proximate result of Defendants' actions, Ms. Baxla has sustained damages, including economic loss and emotional distress.

56.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

57.     Defendants' conduct was extreme and outrageous.

58.     Because of the willful, wanton, and malicious nature of Defendants' actions, the law entitles Ms. Baxla to punitive damages.

12

## COUNT II

### Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of the TVPA, 18 U.S.C. § 1590, 18 U.S.C. § 1595

59.     Ms. Baxla repeats, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

60.     As alleged herein, by recruiting Ms. Baxla through Nancy, and by transporting and harboring Ms. Baxla for purposes of subjecting Ms. Baxla to labor or services in violation of the forced labor provisions of the TVPA, the Defendants engaged in trafficking in violation of 18 U.S.C. § 1590.

61.     Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

62.     As a direct and proximate result of the Defendants' actions, Ms. Baxla has sustained damages, including economic loss and emotional distress.

63.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

64.     Defendants' conduct was extreme and outrageous.

65.     Because of the willful, wanton, and malicious nature of Defendants' actions, the law entitles Ms. Baxla to punitive damages.

## COUNT III

### Benefitting Financially from Peonage, Slavery, and Trafficking in Persons in Violation of the TVPA, 18 U.S.C. § 1593A, 18 U.S.C. § 1595

66.     Ms. Baxla repeats, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

67.     The Defendants knowingly benefitted financially from participation in a venture which engaged in violation of the forced labor provisions of the TVPA, in violation of 18 U.S.C. § 1593A.

68.     Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

69.     As a direct and proximate result of the Defendants' actions, Ms. Baxla has sustained damages, including emotional distress and economic loss.

70.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

71.     Defendants' conduct was extreme and outrageous.

72.     Because of the willful, wanton, and malicious nature of Defendants' actions, the law entitles Ms. Baxla to punitive damages.

## COUNT IV

### Conspiracy to Violate the TVPA, 18 U.S.C. § 1594, 18 U.S.C. § 1595

73.     Ms. Baxla repeats, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

74.     As alleged herein, upon information and belief, the Defendants knowingly conspired with each other and Nancy, to recruit, transport, harbor, and/or obtain Ms. Baxla in violation of the trafficking provisions of the TVPA; and knowingly conspired with each other to obtain Ms. Baxla's labor and services by means of threatened abuse of legal process and/or by means of a scheme, plan, or pattern in violation of the forced labor provisions of the TVPA— each in violation of 18 U.S.C. § 1594.

75.     Upon information and belief, the Defendants knowingly sent Ms. Baxla to work for others, including Mr. Chaudhri's mother, who participated in, and was part of, the conspiracy.

76.     Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

77.     As a direct and proximate result of the Defendants' actions, Ms. Baxla has sustained damages, including emotional distress and economic loss.

78.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

79.     Defendants' conduct was extreme and outrageous.

80.     Because of the willful, wanton, and malicious nature of Defendants' actions, the law entitles Ms. Baxla to punitive damages.

## COUNT V

### Failure to Pay Federal Minimum Wage in Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

81.     Ms. Baxla repeats, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

82.     The Defendants employed Ms. Baxla within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d)-(e).

83.     At all relevant times, Ms. Baxla was employed in domestic service in the Defendants' household within the meaning of 29 U.S.C. § 206(f).

84.     The Defendants willfully failed to pay Ms. Baxla statutory minimum wages in violation of 29 U.S.C. § 206(a) and regulations of the United States Department of Labor.

85.     The Defendants knew, or should have known, about FLSA minimum wage provisions applicable to Ms. Baxla.  The Defendants willfully, intentionally, and without good faith violated the FLSA.

86.     Ms. Baxla brings this claim for relief pursuant to 29 U.S.C. § 216(b).

87.     As a direct and proximate result of the Defendants' unlawful acts, Ms. Baxla has been deprived of wages due to her, in an amount to be established at trial.

88.     The Defendants' willful violation of the Fair Labor Standards Act entitles Ms. Baxla to recovery of her unpaid minimum wages, an equal amount as liquidated damages, and reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 201 *et seq.* and United States Department of Labor regulations, in addition to declaratory relief.

## COUNT VI

### Unjust Enrichment/Quantum Meruit

89.     Ms. Baxla repeats, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

90.     From approximately November 2005 until December 2006, and from approximately January or February 2006 until approximately August 2015, Ms. Baxla conferred a benefit on Defendants by rendering services as a live-in domestic servant in good faith and with the reasonable expectation that she would be fairly compensated for her services.

91.     The Defendants requested and accepted the services that Ms. Baxla performed and should have reasonably expected to pay Ms. Baxla for these services.

92.     The Defendants failed to compensate Ms. Baxla for the fair market value of her services.

93.     The Defendants unjustly enriched themselves at Ms. Baxla's expense and it would be inequitable for the Defendants to be permitted to retain such benefits without paying Ms. Baxla the value of the benefit she conferred upon them.

94.     The Defendants' conduct was willful and wanton, and demonstrated a conscious disregard for Ms. Baxla's rights.

95.     As a direct and proximate result of Defendants' actions, Ms. Baxla has suffered economic losses.

96.     Ms. Baxla is entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## COUNT VII

### False Imprisonment

97.     Ms. Baxla repeats, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

98.     From approximately her arrival in the United States in 2005 until December 2006, and from approximately January or February 2006 until approximately August 2015, the Defendants intentionally and directly restrained Ms. Baxla's freedom of movement and physical liberty by confining her to their home, without legal justification, through the use of words and actions that Ms. Baxla was afraid to ignore or to which she reasonably believed she must submit.

99.     As alleged herein, the Defendants fraudulently represented to Ms. Baxla that they would renew her visa, but did not do so, and represented to Ms. Baxla that if she were to leave their residence without their supervision, she would be discovered and deported or imprisoned. Ms. Baxla was not given a key to the Defendants' residence.

100.    The Defendants prohibited Ms. Baxla from leaving the family home without someone from the family accompanying and supervising her, and scolded her for speaking to anyone other than the Defendants or their family and guests, all while knowing that Ms. Baxla spoke limited English, was unfamiliar with the surrounding area, and had very little money.

101.    Because of the Defendants' representations and rules, Ms. Baxla was reasonably afraid to defy the Defendants and reasonably believed that she had to submit by remaining in their home.

102.    The Defendants committed these actions maliciously and intentionally, with the purpose of causing harm to Ms. Baxla and in conscious disregard of her legal rights.

103.    As a direct and proximate result of the Defendants' conduct, Ms. Baxla suffered damages, including economic loss and emotional distress.

104.    Ms. Baxla is entitled to recover damages in an amount to be determined at trial, including attorneys' fees and other relief that the Court may deem proper.

## PRAYER FOR RELIEF

105.    **WHEREFORE,** Plaintiff, based on the foregoing allegations, respectfully prays for judgment against the Defendants as follows:

(a) Money damages for each Claim for Relief;

(b) Punitive and exemplary damages according to proof;

(c) Attorneys' fees and costs for Plaintiff against the Defendants; and

(d) All such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

106.    Ms. Baxla demands a trial by jury on all claims and issues triable as a matter of right by a jury.

18

Dated: September 26, 2016

Respectfully submitted,

Michael K. Lowman
Virginia Bar No. 41663
*Attorney for Poonam Baxla*
Jenner & Block LLP
1099 New York Ave., NW, Suite 900
Washington, DC 20001
Telephone:  202-639-6018
Fax:  202-661-4977
E-mail: mlowman@jenner.com

Elliot S. Tarloff
Pro Hac Vice Admission Pending
*Attorney for Poonam Baxla*
Jenner & Block LLP
1099 New York Ave., NW
Washington, DC 20001
Telephone:  202-637-6357
E-mail: etarloff@jenner.com

Christina J. Gilligan
Pro Hac Vice Admission Pending
*Attorney for Poonam Baxla*
Jenner & Block LLP
919 3rd Ave.
New York, NY 10022
Telephone:  212-891-1615
E-mail: cgilligan@jenner.com