IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| POONAM BAXLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16cv1218 (JCC/MSN) |
| | ) | |
| | ) | |
| ASMA CHAUDHRI, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants Asma Chaudhri and Shahzad Chaudhri (collectively, "Defendants") motion to dismiss for failure to state a claim. [Dkt. 13.] For the following reasons, the Court will deny Defendants' motion.

**I.    Background**

Poonam Baxla ("Plaintiff" or "Baxla") brings this lawsuit against Defendants for claims arising under the Victims of Trafficking and Violence Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. §§ 1581-1597; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219a; and Virginia law, including claims based upon unjust enrichment and false imprisonment. All of Plaintiff's claims result from her employment with Defendants from 2005 until 2015. The following facts are taken from

1

Plaintiff's Complaint and, for the purposes of this motion, are presumed true.

Ms. Baxla was born in India in or around 1978 or 1979. (Compl., ¶ 20.)  In 1998, she married Sameer Baxla, with whom she had three daughters.  (*Id.*)  The Baxla family lived in New Delhi, where Ms. Baxla provided childcare and cooking services and Mr. Baxla worked in construction.  (*Id.*)  In 2004, Mr. Baxla was murdered.  (*Id.*, ¶ 21.)  Following his death, Ms. Baxla struggled to find work in order to support her daughters.  (*Id.*, ¶ 22.)

In or around January 2005, Ms. Baxla's was introduced to a woman named Nancy.  (Compl., ¶ 23.)  Nancy offered to find a job for Ms. Baxla in the United States performing childcare work, which Ms. Baxla accepted.  (*Id.*)  Nancy arranged for Ms. Baxla's ticket to travel to the United States, as well as her travel documents, including a two-year visa.  (*Id.*, ¶ 24.) Nancy did not tell Ms. Baxla for whom she would be working, nor did she mention that the job would involve housekeeping duties, such as cleaning.  (*Id.*)

In 2005, Ms. Baxla flew to the United States.  (*Id.*, ¶ 25.)  The Defendants, two people she had never spoken to or met previously, greeted Ms. Baxla at the airport and transported her to their home in Falls Church, Virginia.  (*Id.*, ¶¶ 25-26.)

Once Ms. Baxla arrived, she began working for Defendants, providing housekeeping and childcare services.

Typically, Ms. Baxla worked from around five or six in the morning until eleven or twelve at night, seven days per week. (Compl., ¶¶ 28, 33.) She cleaned the Defendants' home, prepared meals, and provided childcare for the Defendants' daughter. (*Id.*) Due to her busy schedule, Ms. Baxla alleges that she was sometimes unable to find time to eat until she had finished with her work for the day. (*Id.*, ¶ 29.)

From 2005 until 2011, Defendants paid Ms. Baxla $350 per month for her labor. (*Id.*, ¶ 31.) In 2011, Defendants increased her pay to $400 per month. (*Id.*) Ms. Baxla paid for her own expenses, with the exception of food, sending whatever money she had left back to her three children in India.[1] (*Id.*, ¶ 6.)

In 2006, Ms. Baxla returned to India briefly to care for one of her daughters, who had fallen seriously ill. (Compl., ¶ 34.) After Defendants promised to help Ms. Baxla renew her two-year visa, she returned to the United States to work again in their home. (*Id.*)

Throughout her employment with Defendants, Ms. Baxla alleges that they isolated her from the outside world. (Compl.,

---

[1] Plaintiff alleges that Defendants stopped paying her altogether in the summer of 2015, leaving her with no means to support her children. (Compl., ¶ 6.)

¶¶ 35, 38.)  She was instructed not to talk to anyone and warned that her inability to speak English would raise suspicions and possibly get her arrested or deported.  (*Id.*, ¶ 35.)  Defendants rarely let her leave their home, especially unaccompanied. (*Id.*, ¶ 36.)  Ms. Baxla was also not permitted to have a phone line or a mobile phone in her private room and was required to purchase a calling card to speak to her family.  (*Id.*, ¶ 39.) In addition, Ms. Baxla had to rely upon Defendants to arrange for her to transfer whatever money she had saved to her children back in India.  (*Id.*, ¶ 39.)  Over the years she lived with Defendants, and especially after Ms. Baxla's visa expired in 2007, Defendants' warnings about the possibility of arrest or deportation increased in frequency.  (*Id.*, ¶¶ 38, 45.)

In and around 2014, Manju and John Ekka (the "Ekkas") learned of Ms. Baxla's situation during a trip to India. (Compl., ¶ 46.)  They reached out to her in an attempt to help her leave Defendants' home.  (*Id.*)  After Ms. Baxla agreed to accept the Ekkas' help, they contacted a government agency to ensure that Ms. Baxla could escape the home safely.  (*Id.*, ¶¶ 48-49.)  Ms. Baxla fled Defendants' home on August 24, 2015. (*Id.*, ¶ 50.)

Plaintiff filed the instant case on September 26, 2016.  [Dkt. 1.]  The Complaint alleges seven different counts, including: (1) forced labor, in violation of the TVPRA; (2)

4

trafficking with respect to peonage, slavery, involuntary servitude, or forced labor, in violation of the TVPRA; (3) benefitting financially from peonage, slavery, and trafficking in persons, in violation of the TVPRA; (4) conspiracy to violate the TVPRA; (5) failure to pay the federal minimum wage, in violation of the FLSA; (6) unjust enrichment; and (7) false imprisonment. [*Id.*] On November 2, 2016, Defendant filed this partial motion to dismiss, asking this Court to dismiss Counts II, IV, VI, and VII for failure to state a claim. [Dkt. 13.] Plaintiff filed her opposition on November 14, 2016. [Dkt. 17.] Defendants replied on November 21, 2016. [Dkt. 18.] Oral argument was held on December 15, 2016. This motion is now ripe for disposition.

## II. Legal Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted). While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Id.* Based upon these allegations, the court must determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief. *Id.* Legal conclusions couched as factual allegations are not sufficient, *Twombly*, 550 U.S. at 555, nor are "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The plaintiff, however, does not have to show a likelihood of success; rather, the complaint must merely allege - directly or indirectly - each element of a "viable legal theory." *Twombly*, 550 U.S. at 562-63.

At the motion to dismiss stage, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Iqbal*, 556 U.S. at 678. Generally, a district court does not consider extrinsic materials when

evaluating a complaint under Rule 12(b)(6).  It may, however,
consider "documents incorporated into the complaint by
reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551
U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d
523, 526 n.1 (4th Cir. 2006).  In addition, the court may
consider documents attached to the defendant's motion to dismiss
if those documents are central to the plaintiff's claim or are
"sufficiently referred to in the complaint," so long as the
plaintiff does not challenge their authenticity. *Witthohn v.
Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006).

### III. Analysis

As a point of clarification, Defendants have not moved
to dismiss Plaintiff's claims for: (1) forced labor under the
federal human trafficking laws; (2) restitution under the
federal human trafficking laws; (3) conspiracy with each other
to violate the federal human trafficking laws; or (4) failure to
pay the federal minimum wage in violation of the FLSA.  Rather,
Defendants' Partial Motion to Dismiss only seeks dismissal of
Counts II (trafficking), IV (conspiracy to commit trafficking
with a person known as "Nancy"), VI (unjust enrichment), and VII
(false imprisonment), alleging that Plaintiff has failed to
state a claim upon which relief can be granted.  The Court will
now address the sufficiency of Plaintiff's Complaint with
respect to each of the contested counts in turn.

7

A.   Count II: Human Trafficking in Violation of the
     TVPRA

Plaintiff's second claim in the Complaint is based upon liability for human trafficking under the TVPRA. Liability for trafficking is imposed separately from liability for forced labor or servitude. *See Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 454 (E.D.N.Y. 2015) (citing *Shukla v. Sharma*, 2012 WL 481796, at *14 (E.D.N.Y Feb. 14, 2012)). Section 1590 outlines the liability for human trafficking as follows: "Whoever knowingly recruits, harbors, transports or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1590(a).

Plaintiff's Complaint alleges that Nancy recruited Ms. Baxla by "offering to arrange a job in the United States" for her to perform childcare work. (Compl., ¶ 23.) After Ms. Baxla accepted Nancy's offer, Nancy arranged for Ms. Baxla's ticket to travel to the United States and travel documents, including a two-year visa. (*Id.*, ¶ 24.) Plaintiff traveled to the United States in 2005, where she met Defendants at the airport. (*Id.*, ¶¶ 4-5.) Ms. Baxla had not met or spoken with the Defendants previously. (*Id.*, ¶ 5.) Defendants then transported her from the airport to their home in Virginia, where she lived, other than for two brief periods, from 2005 until 2015. (*Id.*, ¶ 6.)

8

During that time, Ms. Baxla worked for Defendants, providing childcare and housekeeping services, for $350 per month.[2]  (*Id.*)

Defendants argue that Plaintiff has made no factual allegations that they played any active role in recruiting or transporting Ms. Baxla to the United States.  (Def. Mot. at 5.) In support of this assertion, Defendants claim that Plaintiff has not established that a relationship existed between Defendants and Nancy, the person who did recruit Plaintiff and help arrange her travel to this country.  (*Id.*)  In their reply brief, Defendants also argue that, even if the Court infers that a relationship did exist, Plaintiff has not established that the Defendants knew that Nancy had misled Plaintiff regarding her job duties or pay.  (Def. Rep. at 3.)  At its essence, then, Defendants' argument is that Plaintiff has failed to plead enough facts to establish a violation of the TVPRA for either recruiting or transporting Plaintiff to the United States.

In its reply brief, Defendant also raises an additional argument that Plaintiff cannot sustain a claim based solely upon factual allegations that Defendants "harbored" her in the United States.  (Def. Rep. at 4.)  Defendants cite no binding case law to support this proposition, however.  Instead, they point to Plaintiff's "voluntary" decision to return to

---

[2] Plaintiff's wages were eventually increased to $400 per month.  (Compl., ¶ 6.)

their home after a brief absence in 2006 as proof that she was not trafficked here.  (*Id.* at 5.)

Drawing all reasonable inferences in Plaintiff's favor, as required under a Rule 12(b)(6) motion, the Court finds that Plaintiff has stated a claim under Section 1590(a). Plaintiff's factual allegations, combined with the reasonable inference that Nancy recruited Ms. Baxla to the United States in coordination with Defendants, plausibly give rise to a claim for relief.  Plaintiff has also pled sufficient facts that Defendants harbored Plaintiff in their home for approximately ten years.  Moreover, the Court notes that liability can attach under Section 1590 to anyone who "knowingly . . . obtained *by any means*" a person whose labor violates federal anti-trafficking laws.  18 U.S.C. § 1590(a) (emphasis added). Defendants' conduct plausibly gives rise to a claim for relief under this catchall provision of the statute as well. Accordingly, the Court will deny Defendants' motion to dismiss Count II.

B.   Count IV: Conspiracy to Violate the TVPRA

Plaintiff's fourth claim in the Complaint is based upon Defendants conspiring with Nancy to violate the TVPRA. Federal trafficking laws provide a cause of action against "[w]hoever conspires with another to [commit enumerated trafficking violations]."  18 U.S.C. § 1594(b).

10

"To support a conspiracy claim, the complaint must contain 'enough factual matter (taken as true) to suggest that an agreement was made.'" *Lagayan v. Odeh*, 2016 WL 4148189, at *6 (D.D.C. Aug. 2, 2016) (quoting *Twombly*, 550 U.S. at 556). "An allegation of mere parallel conduct is not enough[,] . . . [n]or are mere conclusory allegations." *Id.* (citing *Twombly*, 550 at 557). Furthermore, in Virginia, "an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or unlawful purpose" to survive demurrer. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985).

In the instant case, Plaintiff's Complaint alleges sufficient facts from which the Court can plausibly infer that an agreement existed between Defendants and Nancy. Ms. Baxla pleaded that Nancy recruited her to work in the United States by offering to arrange a job providing childcare services. (Compl., ¶ 23.) Nancy also arranged for Ms. Baxla's ticket to travel here, as well as her travel documents, including a two-year visa. (*Id.*, ¶ 24.) Having never spoken before, Defendants met Ms. Baxla at the airport and took her to their home to work as a domestic laborer. (*Id.*, ¶¶ 9, 26.) The only reasonable inference to draw from these facts is that there was at least some communication between Nancy and Defendants regarding the transportation of Plaintiff to the United States for the purpose

11

of providing labor.  As a result, the Complaint alleges sufficient facts to infer that Defendants reached an agreement. In addition, Plaintiff has alleged sufficient facts to establish that an unlawful act occurred as the result of this agreement, as Plaintiff worked long hours, seven days per week, for very little pay over the course of ten years.  The Court will therefore deny Defendants' motion to dismiss Count IV.

C.    Count VI: Unjust Enrichment

Plaintiff's sixth claim involves the equitable remedy of unjust enrichment under Virginia law.  Unjust enrichment is a quasi-contract theory that stands for the proposition that "a person should not be allowed to retain a benefit imposed upon him without paying for the services rendered." *Seagram v. David's Towing & Recovery, Inc.*, 62 F. Supp. 3d 467, 477 (E.D. Va. 2014) (internal citations omitted).  In Virginia, a claim for unjust enrichment requires the plaintiff to allege that: (1) she conferred a benefit on Defendants; (2) Defendants knew of the benefit and reasonably should have expected to pay for it; and (3) Defendants accepted or retained the benefit without paying for its value.  *Id.* (citing *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008)).  The Fourth Circuit has previously held that state law claims based upon unjust enrichment will be "preempted by the FLSA where those claims

merely duplicate[] FLSA claims." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007).

Defendants concede in their reply brief that they are not contesting that the FLSA applies to the conduct at issue here. (Def. Rep. at 7.)  Although "the FLSA provides an exclusive statutory remedial scheme" that would normally prevent FLSA claims and unjust enrichment claims from proceeding together, the Court recognizes that unresolved legal and factual disputes regarding Plaintiff's FLSA claim remain. *Choimbol v. Fairfield Resorts, Inc.*, 2006 U.S. Dist. LEXIS 86225, at *22–23 (E.D. Va. Sept. 11, 2006). Moreover, Plaintiff suggested at oral argument that she is seeking slightly different remedies for each claim. Accordingly, at this early stage of the proceedings – without the benefit of discovery to determine if these two claims are, in fact, coterminous – the Court will deny Defendants' motion to dismiss Count VI.

> D.   Count VII: False Imprisonment

Plaintiff's final claim involves false imprisonment under Virginia state law. Virginia defines false imprisonment as "the restraint of one's liberty without sufficient cause." *Zaklit v. Global Linguist Solutions, LLC*, 53 F. Supp. 3d 835, 846 (E.D. Va. Sept. 16, 2014) (citing *Zayre of Va. Inc. v. Gowdy*, 207 Va. 47, 50 (1966)). More specifically, "[i]f a person is under a reasonable apprehension that force will be

used unless he willingly submits, and he does submit to the extent that he is denied freedom of action, this, in legal contemplation, constitutes false imprisonment." *Zayre*, 207 Va. at 51.  Importantly, the threat of force does not need to come from the defendant(s) directly, but can involve the threat of involving other individuals who might use force, such as immigration officials or police officers.  *See, e.g., Lagasan*, 92 F. Supp. 3d at 456-57 (granting claim for false imprisonment because plaintiff's traffickers confined her to their residences and denied her access to anyone who could help her); *Cundiff v. CVS Caremark Corp.*, 86 Va. Cir. 155 (2013) (denying a motion to dismiss a false imprisonment claim when employer threatened to call the police and hire an attorney).

Defendants' argument that Plaintiff's false imprisonment claim should be dismissed because they never threatened to use force directly against her is in direct conflict with the case law.  Moreover, Defendants' assertion that Plaintiff's decision to voluntarily return to their home twice should defeat any claim for false imprisonment is likewise unpersuasive.  Plaintiff has alleged that she decided to return to Defendants' home in 2006 after they promised to renew her visa.  (Compl., ¶ 34.)  However, Defendants failed to do so, letting Plaintiff's visa expire in 2007.  (*Id.*, ¶¶ 35-36, 37.) Once Plaintiff's visa expired, she alleges that Defendants

14

increasingly warned her that she might be reported to law enforcement authorities and possibly deported or arrested. (*Id.*, ¶ 38.)  Furthermore, in 2014, Mr. Chaudhri accused Ms. Baxla of mistreating the family dog, threatened to initiate deportation proceedings against her, and kicked her out of the house.  (*Id.*, ¶ 40.)  Defendants again reassured her that, if she returned, they would increase her pay and renew her visa. (*Id.*)  Neither promise ever materialized.  (*See id.*, ¶¶ 6, 42.)

Based on the facts as alleged, Ms. Baxla exhibited reasonable apprehension that force would be used against her if she did not return to Defendants' home.  Thus, her decision to return twice can hardly be characterized as voluntary.

The Complaint also alleges that Defendants forbade Ms. Baxla from leaving their home unaccompanied, never gave her a key to the house, and instructed her to speak to no one, "especially other Indian people." (Compl., ¶ 7.)  Defendants also warned Plaintiff that others would be suspicious of her inability to speak English and implied that such suspicions could lead to deportation or jail.  (*Id.*)  Furthermore, Plaintiff alleges that she had no access to a phone in her private room and had to rely upon Defendants to transfer money back to her children in India.  (*Id.*, ¶ 39.)

Taken together, Plaintiff's Complaint contains sufficient factual allegations to state a plausible claim for

relief under Virginia law.  Accordingly, the Court will deny

Defendants' motion to dismiss Count VII.

### IV. Conclusion

For the reasons set forth above, the Court will deny

Defendants' partial motion to dismiss.

An appropriate order will follow.


| | /s/ |
|---|---|
| December 21, 2016 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |